Oldham, J. This was a bill in chancery, filed by the appellants as heirs at law of William B. Patton, deceased, against Chester Ashley. The bill charges that, on the 15th day of July, A. D. 1834, certain articles of agreement were entered into between William B. Patton and Chester Ashley, as follows; “This agreement, made this 15th July, A. D. 1834, by and between Chester Ashley and William B. Patton, as follows, viz: The said Patton having this day transferred to the said Chester Ashley, the pre-emption right of Thomas Frazier, under, the act of Congress, of 1814, and the said Ashley has this day entered, by virtue of said preemption, the west fractional part of section seven, the north-west and south-west fractional quarters of section eighteen, west of the sloo, in township nineteen south, of range one east: The north-east quarter of section thirteen, and the south-east fractional quarter of section thirteen, west of the sloo, in township nineteen south, of range one east, containing four hundred and nineteen acres and twenty-three hundreths of an acre, and has paid into the Land-office the sum of five hundred and twenty-four dollars and three-cents: Now, this is to witness, that the said lands are held for the joint benefit of said Patton and Ashley, and to be disposed of for their joint benefit, and when sold, the moneys paid as aforesaid, by said Ashley, in entering said land, and the sum of three hundred and eighty-five dollars to said Patton, the estimated value of said pre-emption right of said Frazier, to be first paid to said Ashley and Patton, with interest from this date, at ten per cent, per annum, on each sum; and the said Ashley has this day located the donation claim of Pleasant Womack, near the lands aforesaid, for the joint benefit of said Patton and Ashley, and for which said Ashley is to be paid as aforesaid, with interest as aforesaid, the sum of five hundred dollars; and Ashley agrees to locate as many other donation claims, on the same terms, on lands adjoining, as he may then have, on said Patton furnishing the numbers, and when located to be paid for at the sum of five hundred dollars, with interest as aforesaid. Witness our hands and seals, in duplicate, each party retaining a copy, this 15th July, 1834. W. B. Patton. [l. s.] Chester Ashley, [l. s.]” Upon the agreement, said Ashley made the following endorsement, without date: “The south half of section twelve was located by a donation claim for benefit of Shern L. Daniel, and by said Daniel sold to me, and the south-west quarter of section two, and the south-east quarter of section three, all in township nineteen south, of range one west, and this agreement is to apply to said donation claims, and are to be paid as specified in this contract, with interest from the date of this contract at the rate of ten per cent.” The bill charges, that there was paid to said Ashley, by the said Patton, on the 4th day of Nov., 1835, in the life-time of the latter, upon the contract, the sum of two hundred dollars, as shown by Ashley’s receipt, and at another time the sum of five hundred and three 71-100 dollars, for which no receipt was given. The bill further charges, that at the time, or shortly after, the making of the contract, there arose a contest about the validity of the preemption claim of Frazier, which was finally decided by the Commissioner of the General Land-office against the claim, and the sum of five hundred and twenty-four 3-100 dollars paid into the Land-office, thereon by Ashley, was returned to him. That since the pre-emption has been lost, that said Ashley has denied and still denies that complainants have any interest in the residue of said lands so located as aforesaid- That the ten per cent, interest per annum, annually accruing to said Ashley, upon the residue of money so coming to him as aforesaid, is rapidly increasing the incumbrance upon that portion of the lands; That as far as complainants know, or are advised, there have been no sales made of the said lands or any part of them. The bill prays partition of the lands, and also that the court decree the amount to which Ashley is entitled for the donation claims, which the complainants are ready to pay, &c. The defendant, in his answer, admits the agreement as set forth by the bill, that the pre-emption was located upon the lands specified, and that it was finally decided to be invalid. The answer contends, that Patton, being unable to raise the necessary funds to make the entry of the lands by the pre-emption, applied to respondent for funds necessary to enter those lands, and filed in the Land-office full evidence of his right, as assignee or legal representative, of said Frazier, to said pre-emption claim, and executed to respondent a deed therefor, who entered the lands in his own name as the legal representative of Frazier: That the lands so entered were situated immediately on the west bank of the Mississippi river, and occupied a large front of said river, and were of great value, and formed the only and sole induce-meat to respondent to enter into the agreement with Patton: That Patton represented to respondent that the title to said pre-emption was indisputable, and that it was a bonafide pre-emption: That confiding in such representations, and satisfied of the great value of the lands forming the front lands to those specified in said agreement and endorsement as having been entered with donation claims on said Patton’s furnishing the numbers, respondent fixed the price of the lands so to be entered with donation claims, at the price specified in the agreement (five hundred dollars for each donation claim), being one dollar and fifty-six and one-fourth cents per acre, being scarcely one-fifth of their actual value: That ¿he sole and only remuneration, inducement and motive of respondent, for entering into the agreement with Patton, was the conveyance by Patton of Frazier’s pre-emption, covering four hundred and nineteen acres and twenty-threehundreths of an acre of front land, worth at the time, as represented by said Patton (and still believed by respondent to have been), at least twenty dollars per acre. The answer insists, that, as the pre-emption failed, Patton wholly failed to perform his part of the contract. The answer states, that after the lands were located, and the title believed to have been wholly settled, Patton, in his life-time, was desirous that the whole should be retained, paid to respondent certain moneys, the amount not recollected; but for whatever amount a receipt was given, and that no payment was made for which a receipt was not given. It is admitted drat the amount paid for the entry under Frazier’s preemption was refunded to respondent, at the Land-ófiice at Little Rock, on the 19th April, 1838, without interest; that respondent does not know that complainants are the representatives of Patton, as stated in the bill,, but denies that they are such, and requires the same to be proved. The answer further charges, that respondent, at his own proper costs and charges, caused the claim of Frazier to be defended in the General Land-office, referred to the Secretary of the Treasury, and had the Attorney General of the United States called on for his opinion; that Patton was justly and equitably chargeable with the same, and that those services were reasonably worth five hundred dollars, taking the usual charges in such cases as the criterion: That respondent had located the south-east quarter of section three, the south-half of section two, and the north-west quarter of section twelve, the numbers of which were not furnished, nor the lands examined, by said Patton; that the south half of section twelve had been located for the benefit of Shem L. Daniel, prior to the purchase of the pre-emption of Frazier, by respondent, the same was subsequently purchased of Daniel, by respondent, at the time of the endorsement of the same on the original contract: That the lands have not been sold, that by the contract respondent was to hold the same, and Patton was to receive his portion only on the sale of the land having fully been made by respondent, that the money paid by Patton to respondent, was with the view of changing the terms of the contract, which was to have been done as soon as Patton paid one-half the money expended by respondent, and one-half the price agreed upon for the donation claims, and put upon the pre-emption claims; and as neither event occurred during the life-time of Patton, or since, the contract was not changed: That respondent has ever been ready'to refund any money in his hands (if any) over and above what he is justly entitled to for the use of his money while in the Land-office. The answer insists that, inasmuch as the pre-emption of Frazier was the sole inducement to the cotí tract on the part of respondent, the consideration on the part of Patton wholly failed, and that neither he nor his heirs have any title or interest in the other lands located under the agreement; that since the contract was entered into, respondent has obtained patents for the donation claims, and procured deeds from each of the original claimants to himself, and believes that his expense in procuring' said deeds was at least one hundred dollars each, that being the average cost of procuring said deeds and having the lands recorded. It is admitted upon the record, that complainants are the representatives of Patton, deceased, as stated in the bill. No testimony was taken, but the case was heard upon the bill, answer, replication, and exhibits. A decree was rendered for the defendant, and complainants appealed to this court. Many facts are set up by the answer not responsive to the allegations contained in the bill, and in avoidance of them. For the purpose of availing himself of those facts, the defendant should have proven them, and without proof establishing them they cannot be taken into consideration by the court. Hart v. Ten Eych et al., 2 J. C. R. 62. Upon the facts charged in the bill; and admitted; or not denied by the answer; the rights of the parties must be determined. It does not appear from the agreement entered into by the parties; nor does it appear as an established fact from the bill and answer; that the consideration of tire contract on the part of Patton; was the pre-emption claim of Frazier, and if that consideration failed, he was to have no interest in the other lands located under the agreement The terms of the contract are plain and distinct, and need no construction other than that which the language clearly imports. The parties entered into the contract for a mutual and joint speculation in lands. Patton held a pre-emption claim which he supposed to be valid, which was to be located for the joint benefit of the parties, and Ashley was to advance the necessary funds for that purpose, the price of the claim was fhsed at three hundred and eighty-five dollars, and the money paid by Ashley was five hundred and twenty-four dollars and thrqe cents, from the sale of the land the parties were to be reimbursed, with ten per cent, interest per annum upon the sums respectively, and the residue was to be divided equally between them. This part of the contract failed in consequence of the pre-emption claim being adjudged invalid, and no question arises upon it excepting whether the parties should bear equally, or either of them exclusively, the interest upon the money paid by Ashley into the Land-office, during the time that it remained there. The money was advanced on joint account, and had the pre-emption been held valid, Ashley would have been entitled, from the sale of the lands, to interest at the rate of ten per cent, per annum; and we conceive, that, as the object for which it was advanced failed, he is entitled to a like rate of interest during the time, to be borne equally by the parties. The agreement recites, that Ashley had, on the day of the date of agreement, located the donation claim of Pleasant Womack, near the lands entered by the pre-emption, for the joint benefit of the parties, and for which he was to be paid in the like manner the sum of five hundred dollars, with ten per cent, interest. But the contract does not shoAV that the pre-emption claim was the consideration upon which Ashley agreed to make the location and hold the land for the joint benefit of himself and Patton. The inference is equally strong, that in consideration of Patton’s furnishing the numbers of the lands upon which the location was made, was that upon which this part of the agreement was entered into. The contract being under seal prima facie imports a legal and valid consideration for eveiy stipulation contained in it, and if the contract, or any independent stipulation contained in it, was without consideration or upon a consideration which had failed, the onus probandi is upon the party seeking to avoid it, to show such to be the fact. Cummins v. Harrall & Scott, 1 Eng. Rep. 308. Each stipulation in the contract appears to be independent of the others. There is nothing from which we can infer, that, in case either or any of the stipulations should fail, the parties should not have an equal interest in the benefits accruing under those remiining. Had such been the intention of the parties they should have expressed it in their agreement. But nothing appears therefrom, from which we are authorized to conclude such a result was intended. Ashley, by endorsement upon the contract, declared that certain lands had been entered by him, and that the agreement was to apply to them. He insists in his answer, in one part of it, that complainants should have] no interest in those lands, because Patton did not furnish the numbers or examine the character and quality of the land, but in a previous part of the answer, this statement is contradicted by the admission that die lands specified in die endorsement were entered with donation claims upon said Patton’s furnishing the numbers. The position assumed in the answer that Patton’s interest in these lands was in consideration of the pre-emption claim, is at variance with the common sense construction of the contract. The agreement was, that Ashley was to locate as many other donation claims as he might have, to be held for their joint benefit, upon lands adjoining those specified, upon Patton’s furnishing numbers, Ashley to receive from the sales of the land the sum of five hundred dollars for each donation claim, with ten per cent, interest. The consideration upon which this part of the agreement was made, was that Patton should furnish the numbers of the land, and that Ashley should receive five hundred dollars and interest for each donation claim that might be thus located in the manner specified. It is alleged in the answer, by way of argument, to prove that the pre-emption claim was the sole and only inducement to the contract on the part of Ashley, that “respondent confiding, &c., and satisfied of the great value of the lands forming the front lands to those specified in said agreement and endorsement, as having been entered with donation claims, on said Patton’s furnishing the numbers, he fixed the price of the lands so to be entered with.donation claims at the price specified in said agreement (five hundred dollars for each donation claim, being one dollar and fifty-six and one-fourth cents per acre), being scarcely one-fifth of their actual value.” There is, as we conceive, a very wide distinction existing between a “donation claim’’ and lands¡, entered by a donation claim. The first is the right to select and locate three hundred and twenty acres of land, as a donation, under an act of Congress; the last is the land itself so appropriated. Five hundred dollars may have been a high price for the first, but, by a judicious selection, the land, when located, may have been worth five times that amount. Ashley was to be paid five hundred dollars and interest for the donatibn claim, and not for the land. We must take the price agreed upon between the parties as the value of the donation claims; the value of the lands located by virtue of them, is no criterion. If Patton made selections of lands, the quality of which, with their circumstances, enabled Ashley to make locations, which were immediately worth five times the value of the claims, that information formed a most valuable consideration for the contract. It enabled him to make investment of his claims at five hundred dollars each, bearing ten per cent, interest per annum, secured by real estate worth at the time twenty-five hundred dollars, with the additional profit of one-half of the land or its value, after deducting the price of the donation claim and interest therefrom. It does not well comport with the principles of justice, for a man, under such circumstances, to say that the consideration for which he executed the contract on his part had failed, and appropriate the entire profits of the transaction to himself, to the exclusion of the party who furnished the information under which he was enabled to make such a pro-, fitable investment of his capital. Again, after the validity of the preemption claim was called into question in the Land-office, and before it was determined, Ashley received from Patton, on the 5th of Nov. 1835, two hundred dollars, upon the contract. Trae, he stated that the payment was made after the title to the pre-emption was supposed to have been settled; yet the exhibits to the complainant’s bill show that it was then a subject of investigation at Washington city, and that, on the day the payment was made, he addressed a letter making enquiries in relation to the prospect of obtaining a patent for the land. Although he has long since received back the money paid by him in the Land-office, yet it does not appear that he ever offered to pay back such money, so paid him by Patton, until the filing of the bill in this case. This circumstance might be used as illustrative of his understanding of the contract at tire time, were it necessary, but conceiving the terms of the agreement to be clear, it does not require construction. The respondent claims, that “at his own proper costs and charges, he caused the pre-emption of Frazier to be defended in the General Land-office, &c.” and that “the services were reasonably worth five hundred dollars;” that “he had caused patents to be issued on the donation claims, and had procured to himself a deed from each of the-original claimants for the lands in fee simple, and believes the expense of procuring said deeds was at least one hundred dollars each.” No proof, however, was introduced in support of these allegations; they are put in issue by the replication, and before the defendant would be entitled to the amount claimed, it would be incumbent on him to show, by proof, that the services were rendered, and the expenses incurred as charged. The taxes alleged to have been paid were a legal charge upon the land, and, if paid by Ashley, and that is a legal presumption, he is entitled to repayment of one-half of the same. The court is, therefore, of opinion, that the lands located under the agreement were,.and' are, held by Ashley, as trustee for the benefit of the contracting parties. The lands being so held, the complainants ask partition, alleging as a reason therefor, that tire ten peí-cent. interest annually accruing to respondent upon the residue of money due him, is rapidly increasing the incumbrance upon tliat portion of the land coming to them. To this the appellee has no right to object, as he will receive all that he is in equity entitled to, and hag not shown that by partition he will be prejudiced. The decree of the Circuit Court in'chancery must be reversed, and this cause be remanded, with directions to state an account between the parties according to their rights, as herein determined, and, upon the payment to Ashley, by the complainants, of the amount with which they are justly chargeable, and which he is entitled to receive from them, to cause partition of the lands to be made according to law.